Frank **NAGY**, on behalf of himself, his Children, Weston Nagy and Jordan Nagy, and those similarly situated, and Sonja Brackett, on behalf of herself, her children, Cory Brashear and Cameron Brackett, and those similarly situated, Appellants–Cross/Appellees,

v.

**EVANSVILLE–VANDERBURGH SCHOOL CORPORATION,**
Appellee–Cross/Appellant.

No. 82A05–0609–CV–488.

Court of Appeals of Indiana.

July 13, 2007.

Rehearing Denied Sept. 11, 2007.

Jacquelyn Bowie Suess, Kenneth J. Falk, ACLU of Indiana, Indianapolis, IN, Attorneys for Appellants.

Patrick A. Shoulders, Robert L. Burkart, Ziemer Stayman Weitzel & Shoulders, LLP, Evansville, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellants/Cross–Appellees, Frank Nagy, on behalf of himself and his children Weston and Jordan Nagy, and those similarly situated ("the Nagys"), and Sonja Brackett, on behalf of herself and her children Cory Brashear and Cameron Brackett, and those similarly situated ("the Bracketts") (collectively "the Parents"), challenge the trial court's denial of their request for attorney fees upon remand. Appellee/Cross–Appellant, the Evansville–Vanderburgh School Corporation ("the EVSC"), cross-appeals, claiming that the trial court improperly determined that the EVSC's practices constitute a violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

We reverse and remand.

This is the second time this matter has been before us. As noted in our earlier opinion, the relevant facts are substantially undisputed. For the 2002–2003 school year, the EVSC imposed a $20 fee on all students in grades Kindergarten through twelve. The EVSC made no attempt to hide the fact that the fee was imposed as part of an attempt to balance its budget. The money generated by the fee, along with state funds and local property tax receipts, was deposited into the EVSC's general fund. The fee was charged to every student, including students who qualified for the free or reduced school lunch and textbook programs.

During the period relevant to this appeal, Frank Nagy and Sonja Brackett were residents of Evansville whose children were enrolled in public schools under the EVSC's jurisdiction. The EVSC charged Nagy the $20 fee for each of his children enrolled for the 2002–2003 academic year and charged Bracket the $20 fee for each of her children enrolled even though they qualified for the reduced or free school lunch and textbook programs.

*The Initial Suit*

On October 4, 2002, Nagy, on behalf of himself, his children, and others similarly situated, filed a class action complaint seeking declaratory and injunctive relief. This initial complaint alleged only a violation of the Indiana Constitution. On Octo-

ber 18, the complaint was amended to add Sonja Brackett, on behalf of herself, her children, and those similarly situated as a subclass to the original action. The Bracket subclass joined in the claim that the fee violated the Indiana Constitution, but added a claim that the fee, as applied to the members of the subclass, violated the due process clause of the Fourteenth Amendment to the United States Constitution. Upon cross-motions, the trial court granted summary judgment in favor of Brackett on grounds that imposing a fee upon students who qualify for the reduced or free school lunch and textbook programs violated the due process clause of the Fourteenth Amendment. However, the trial court granted summary judgment in favor of the EVSC on the Parents' claim that the fee was in violation of Article 8, Section 1 of the Indiana Constitution. The Plaintiffs appealed and the EVSC cross-appealed.

### The First Appeal

Upon appeal, a divided panel of this court reversed the judgment of the trial court with regard to the Indiana constitutional claim. *See Nagy v. Evansville–Vanderburgh Sch. Corp.*, 808 N.E.2d 1221, 1235 (Ind.Ct.App.2004) (*"Nagy I"*). We construed Article 8, Section 1 broadly and held that the fee violated that provision of the Indiana Constitution because the fee was used to pay for what amounted to tuition.[1] *Id.* Because we held that the fee was in violation of the Indiana Constitution, we did not address the due process claim. *Id.* Our Supreme Court granted transfer, thereby vacating our opinion.

Upon transfer, our Supreme Court, although not going so far as we had with regard to the definition of "tuition," concluded that the fee charged by the EVSC did constitute "tuition" and that charging the fee therefore violated Article 8, Section 1. *Nagy v. Evansville–Vanderburgh Sch. Corp.*, 844 N.E.2d 481, 482 (Ind.2006) (*"Nagy II"*). Applying this holding to the facts before it, the court concluded:

> "In essence, the very programs, services, and activities for which EVSC charges a fee already are a part of a publicly-funded education in the state of Indiana. However, this conclusion does not preclude EVSC from offering programs, services or activities that are outside of or expand upon those deemed by the legislature or State Board as part of a public education. The Indiana Constitution does not prohibit EVSC from charging individual students for their participation in such extracurriculars or for their consumption of such services. However the mandatory fee EVSC imposed generally on all students, whether the student avails herself of a service or participates in a program or activity or not, becomes a charge for attending a public school and obtaining a public education. Such a charge contravenes the 'Common Schools' mandate as the term is used in Article 8, Section 1 and is therefore unconstitutional." *Id.* at 493.

In a footnote to its opinion, the court wrote, "EVSC invites this Court to 'consider the federal substantive due process claim' because of its importance." *Id.* at 483 n. 3. However, because the court decided the case upon the issue of the Indiana Constitution, the court declined the invitation to address the federal claim. *Id.* The court then remanded the cause for further proceedings. *Id.* at 493.

### Proceedings Upon Remand

Upon remand, the Parents filed a motion for attorney fees and costs, with ac-

---

**1.** The word "tuition" was held to be education or teaching as opposed to the amount charged for that education or teaching. *Id.* at 1225.

companying documentation in support thereof, on May 30, 2006. The Parents based their claim for attorney fees on 42 U.S.C. § 1988. In July of 2006, both the Parents and the EVSC filed briefs with the trial court explaining how each thought the case should proceed upon remand. On September 11, 2006, the trial court entered its Decision of Trial Court on Remand, which states in relevant part:

"The very programs, services, and activities for which EVSC charged a fee for the academic year 2002–2003 were already a part of a publicly-funded education in the state of Indiana. This mandatory fee was imposed generally on all students, whether the student availed herself of a service or participated in a program or activity. Therefore, collection of that activity fee was in violation of Ind. Const. Art. 8, § 1 and contrary to the decision of the Supreme Court in this case on appeal. *Nagy v. Evansville–Vanderburgh Sch. Corp.*, 844 N.E.2d 481 (Ind.2006).

Therefore, the EVSC shall promptly notify all persons who paid the activity fee: (a) that they are entitled to a refund of the fee, and (b) how to collect that refund. Each fee payor shall be allowed a reasonable period of time within which to apply for the refund. The refund shall be due and payable regardless of whether the student did or did not participate in a program or consumed any services which may have been contemplated by the fee. After the reasonable period of time has expired, the EVSC shall promptly pay the refund to those persons who properly submitted their claim within the period, and are determined to be entitled to receive the refund.

The EVSC may charge individual students a reasonable fee for their voluntary participation in or consumption of a specific activity, service or program that is outside of or expand[s] upon those deemed by the legislature or the State Board [of Education] as a part of a public education.

*The EVSC may not charge this fee to any student who qualifies for the free reduced school lunches and/or textbook programs.*

Any future mandatory fees charged by the EVSC must be activity, service or program specific, and not a general fee imposed generally on all students. Only those students who voluntarily avail themselves of a fee-qualifying activity, service or participated in a fee-qualifying program or activity may be charged a reasonable fee.

The [Parents'] Motion To Lift Stay of Judgment is granted. The [EVSC]'s Motion To Decertify Class is denied.

In one way or another, both sides have prevailed in some respects. The [Parents] prevailed on their particular claim that the 2002–2003 activity fee was unconstitutional, but did not prevail upon their claim that no activity fee could be charged. The [EVSC] did not prevail on its claim that the 2002–2003 activity fee was permissible, but did prevail on its claim that certain educationally related expenses may be assessed against students and their parents. [added in a footnote: Those other than legislatively-mandated curriculum requirements.] In addition, these issues were utterly unclear in Indiana prior to the Supreme Court decision in this case. Some might say even greater clarity is needed. In any event, the court declines to award attorney fees and expenses for the reasons herein stated." App. at 18. (emphasis supplied).

In response to the denial of their request for attorney fees, the Parents filed a notice

of appeal, initiating the appeal currently before this court.[2]

### The Current Appeal

The Parents claim that they are entitled to attorney fees pursuant to 42 U.S.C. § 1988. The relevant portion of Section 1988 states:

"(b) Attorney's fees

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."

The Parents argue that they are "prevailing parties" under Section 1988 and are therefore entitled to recovery of attorney fees.[3]

■ We ordinarily review a trial court's denial of an award of attorney fees under Section 1988 for an abuse of discretion. *Daffron v. Snyder*, 854 N.E.2d 52, 55 (Ind. Ct.App.2006). However, when a trial court denies attorney fees to a prevailing party under Section 1988 as a result of applying a principle of law, the justifications for the generally deferential standard of review are absent. *Id.* As with all questions of law, we review the denial of attorney fees *de novo* in such a situation. *Id.*

■ We also note that courts have interpreted Section 1988 to mean that although the trial court has "discretion" to award attorney fees, this discretion is limited by the proposition that a prevailing party should ordinarily recover attorney fees unless special circumstances would render such an award unjust. *See Murphy v. Kolovitz*, 635 F.2d 662, 663 (7th Cir.1981); *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). As explained by the Court in *Hensley*, this is so because the purpose of Section 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. 461 U.S. at 429, 103 S.Ct. 1933; *see also King v. Ill. State Bd. of Elections*, 410 F.3d 404, 413 (7th Cir.2005). In addressing a similar provision in 42 U.S.C. § 2000e–5(k), the United States Supreme Court explained that "[i]f the objective of Congress had been to permit the award of attorney's fees only against defendants who had acted in bad faith, 'no new statutory provision would have been necessary,' since even the American common-law rule allows the award of attorney's fees in those exceptional circumstances." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 416–17, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (quoting *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)).[4] Thus, cases interpreting

---

**2.** In *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court stated that "[a] request for attorney's fees should not result in a second major litigation." Ideally, the *Hensley* Court wrote, "litigants will settle the amount of a fee." Unfortunately, that has not been the case in the present situation; nor, judging by the vast number of cases regarding the issue of attorney fees, has the *Hensley* Court's wish come true.

**3.** It appears to be undisputed that the federal due process claim was brought pursuant to 42

U.S.C. § 1983, which authorizes civil actions against those who under color of law deprive the plaintiff of "any rights, privileges, or immunities secured by the Constitution...."

**4.** Contrariwise, despite the use of the neutral "prevailing *party,*" a prevailing defendant may recover attorney fees only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. *Hensley,* 461 U.S. at 429 n. 2, 103 S.Ct. 1933 (citing *Christiansburg Garment Co.,* 434 U.S. at 421, 98 S.Ct. 694).

Section 1988 represent a rather substantial statutory exception to the "American Rule," under which parties normally pay for their own attorney fees. The end result of this is that the trial court's "discretion" is substantially limited, and attorney fees are awarded unless otherwise unjust.

■ The applicable case law also has defined the term "prevailing party," as used in Section 1988, in a rather generous fashion. *See King,* 410 F.3d at 414. Parties are considered to have "prevailed" in litigation if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Id.* (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). The touchstone of the prevailing party inquiry is " 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.' " *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). At a minimum, to be considered a prevailing party, all a party must do is be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. *Id.* (citing *Garland Indep. Sch. Dist.,* 489 U.S. at 792, 109 S.Ct. 1486).[5]

In the present case, the Parents initially argue that they are entitled to recover attorney fees upon two grounds: first, they claim that they "prevailed" upon both their due process claim and their state constitutional claim; alternatively, they argue that even if they did prevail only upon their state law claim, they are still entitled to recovery of attorney fees under Section 1988 because the relevant case law requires only that their federal claim be "substantial" and arise out of a common nucleus of operative facts with their successful state law claim.

■ The EVSC urges us to consider the Parents' due process claim upon its merits. The EVSC is confident that, if this issue were to be considered upon its merits, it would fail. If the due process claim fails on its merits, then the Parents cannot be considered to be the "prevailing party" for purposes of Section 1988, because a plaintiff whose federal constitutional claim is actually unsuccessful, i.e. rejected on the merits, cannot be considered the prevailing party for purposes of Section 1988. *See e.g., Mateyko v. Felix,* 924 F.2d 824, 828 (9th Cir.1990).

In their reply brief/cross-appellees brief, the Parents backtrack from their initial argument that they prevailed upon the merits of their due process claim. Perhaps fearful that if this claim is considered upon the merits they would not prevail, the Parents claim that we need not address the actual merits of the federal due process claim, but only determine whether this claim was "substantial" and arose out of a common nucleus of operative fact. For several reasons, we need not address the merits of the Parents' federal due process claim to address the issue before us.

---

5. We observe that case law interpreting Section 1988 seems to be atypical in the sense that it encourages litigation by using a generous definition of "prevailing party" and by limiting the trial court's discretion in deciding whether to award attorney fees to a prevailing party. Whether or not we would interpret Section 1988 in a similar manner were we writing upon a clean slate, the controlling precedent from the United States Supreme Court has clearly indicated a preference in favor of awarding attorney fees to a plaintiff who succeeds in even the most modest sense upon their claims. Although the trial court's discretion is limited with regard to awarding attorney fees or not to the prevailing party, the trial court does have discretion, as explained below, to determine the reasonableness of the attorney fees awarded given the various circumstances of the case.

For one, the question of the status of the Parents' due process claim is not entirely clear.[6] In its initial ruling upon summary judgment, the trial court determined that the EVSC had violated the due process rights of the Bracketts by charging the $20 fee even though the Brackett children qualified for the reduced and/or free school lunch and textbook programs. The Bracketts did therefore succeed in the trial court's initial ruling upon summary judgment. However, the trial court's judgment was not affirmed upon appeal.

Neither this court nor our Supreme Court addressed this issue upon the initial appeal because the Parents succeeded upon their claim that the $20 fee, as applied to all students, violated Article 8, Section 1 of the Indiana Constitution. In this situation, it could be argued that the trial court's initial judgment was, as a whole, a nullity. *See Tioga Pines Living Ctr., Inc. v. Ind. Family & Soc. Servs. Admin.*, 760 N.E.2d 1080, 1088 (Ind.Ct. App.2001) (noting that a trial court's judgment which has been reversed is a nullity and that reversal returns the parties to the position they occupied prior to the judgment), *trans. denied.* But the reversal of the trial court's judgment here was not based upon the trial court's resolution of the due process claim. Whether or not this portion of the trial court's judgment was also a nullity, one thing is clear—at the time of the first appeal, the federal due process issue was, for all intents and purposes, moot.

Adding an additional dimension to this question is that upon remand, the trial court held that the EVSC could not charge a fee—even an otherwise-permissible "extracurricular" fee—to those students who qualified for the free/reduced school lunch and textbook programs, even though it was under no obligation to do so by our Supreme Court's opinion. Thus, even if the trial court's initial ruling in favor of the Bracketts on the due process claim was a nullity and/or moot upon appeal, the trial court's order upon remand could be read to resurrect its earlier ruling that the EVSC could not charge *any* fee to those on the free or reduced lunch and textbook programs without offending due process. The question before the trial court was whether the EVSC's practice of charging the fee during the 2002–2003 school year was proper. Thus, the trial court's comments regarding what the EVSC could charge in the future were dicta, and do not require us to address the federal due process claim.

▬▬ Certainly, resolution of the federal due process claim upon its merits would resolve the issue before us. But courts are traditionally loath to address constitutional issues when they are otherwise avoidable. *See State v. Brown*, 840 N.E.2d 411, 414 (Ind.Ct.App.2006). Here, as in the initial appeal, it is unnecessary for us to address the actual merits of the federal due process claim.[7] This is so

---

**6.** For simplicity's sake, in addressing the "prevailing party" question, we generically refer to the federal due process claim brought by "the Parents" without distinguishing between the Nagys, who brought only a state constitutional claim, and the Bracketts, who joined in the Nagys' state constitutional claim and also brought a federal due process claim. As explained in detail below, because only the Bracketts brought a federal due process claim, only they may be considered to be the

"prevailing party" for purposes of Section 1988.

**7.** Indeed, quite recently stated in *Staley v. Harris County, Tex.*, 485 F.3d 305, 485 F.3d 305, 314 (5th. Cir.2007), a determination of mootness neither precludes nor is precluded by an award of attorney fees. Instead, the attorney fees question turns upon a wholly independent consideration—whether the plaintiff is a prevailing party. *Id.*

because a plaintiff may be considered to be the prevailing party for purposes of Section 1988 even where the merits of the plaintiff's federal constitutional claim have not been addressed.

As explained by the Third District of this court in *City of Gary v. Redmond*, 489 N.E.2d 543 (Ind.Ct.App.1986), the United States Supreme Court has concluded that an award of attorney fees under Section 1988 does not necessarily require a plaintiff's success under one of the enumerated sections or titles found in Section 1988. *Id.* at 544 (citing *Maher v. Gagne*, 448 U.S. 122, 132, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)). Instead, fees under Section 1988 may be awarded in situations where the plaintiff prevails on a "wholly statutory, non-civil rights claim pendent to a substantial constitutional claim" or in a case in which both a "statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication." *Id.* (citing *Maher*, 448 U.S. at 132, 100 S.Ct. 2570). This has been applied where the "non-civil rights claim" is a state law claim. *See Seals v. Quarterly County Court of Madison County, Tenn.*, 562 F.2d 390 (6th Cir.1977); *Albright v. Good Shepherd Hosp.*, 901 F.2d 438, 440 (5th Cir.1990) (citing *Heath v. Brown*, 807 F.2d 1229 (5th Cir.1987)).

The rationale for extending Section 1988 to cover situations where the federal constitutional claim remains unresolved is that " 'Congress' purpose in authorizing a fee award for an unaddressed constitutional claim was to avoid penalizing a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a non-constitutional claim is dispositive.' " *Redmond*, 489 N.E.2d at 545 (quoting *Smith v. Robinson*, 468 U.S. 992, 1007, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). Both the *Maher* and *Smith* decisions referred to the Report of the Committee on the Judiciary

of the House of Representatives accompanying H.R. 15460, the bill which was substantially identical to the Senate bill which was finally enacted as Section 1988. *Maher*, 448 U.S. at 132 n. 15, 100 S.Ct. 2570; *Smith*, 468 U.S. at 1007, 104 S.Ct. 3457. The Report contained a footnote which, as quoted by the *Maher* court, reads:

" 'To the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines*, 486 F.2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *See Hagans v. Lavine, supra; United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), attorney's fees may be allowed *even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." United Mine Workers v. Gibbs, supra*, at 725, 86 S.Ct., at 1138.' " *Maher*, 448 U.S. at 132 n. 15, 100 S.Ct. 2570 (quoting H.R.Rep. No. 94–1558, p. 4, n. 7 (1976)) (emphasis supplied).

The "substantiality" test referred to in this footnote refers to the decision in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), wherein the Court defined an "unsubstantial" claim, for purposes of federal jurisdiction, as one "so attenuated and unsubstantial as to be ab-

solutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion." *Id.* at 537, 94 S.Ct. 1372 (citations and internal quotations omitted). The *Hagans* Court further wrote that a "question ... may be plainly unsubstantial, either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." *Id.* (citations and internal quotations omitted); *accord Redmond,* 489 N.E.2d at 549.

■ Thus, where a plaintiff brings a claim which does not fall within the class of claims for which fees are recoverable under Section 1988 along with a federal constitutional claim which does fall within the class of claims for which fees are recoverable under Section 1988, that plaintiff may recover attorney fees even if the court does not address the federal constitutional issue, so long as the claims arise out of a common nucleus of operative fact and the federal claim meets the *Hagans* "substantiality" test.

■ Turning to the specifics of the case before us, we must reject the trial court's determination that the Parents were not the prevailing party under Section 1988. Based upon the relevant case law, we readily conclude that the Parents did prevail upon their claim that the fee violated Article 8, Section 1 of the Indiana Constitution—our Supreme Court explicitly held so. *See Nagy II,* 844 N.E.2d at 482–83. The Parents succeeded on a significant issue in the litigation which achieved some of the benefit they sought in bringing the suit. *See King,* 410 F.3d at 414 (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). Thus, the Parents may point to a resolution of the dispute which changed the legal relationship between themselves and the EVSC—the EVSC cannot charge the $20 fee to all students and must refund the moneys already received. This outright victory upon the merits of the state constitutional claim fits within the generous definition of "prevail" adopted by the federal Supreme Court. *See id.* (citing *Garland Indep. Sch. Dist.,* 489 U.S. at 792, 109 S.Ct. 1486).

We also conclude that both the state constitutional claim and the federal due process claim arose out of a common nucleus of operative facts—both claims arose out of the EVSC's practice of charging students a $20 activity fee. The EVSC does not even directly dispute this. The dispositive question, therefore, is whether the Parents' federal due process claim was "substantial."

■ We emphasize that for us to say that the Parents' due process claim meets the substantiality test does not require us to address the actual merits of the claim. Instead, all we need determine is whether the Parents' federal due process claim was "obviously without merit," "obviously frivolous," or "no longer open to discussion." *See Hagans,* 415 U.S. at 537, 94 S.Ct. 1372. This is admittedly a rather low standard, and one which we conclude the Parents' federal due process claim passes.

In so concluding, we note that the trial court, in its initial ruling upon summary judgment, ruled in favor of the Bracketts upon the federal due process claim. Moreover, upon appeal to this court, Judge Bailey, although dissenting from the majority with regard to the state constitutional issue, agreed with the trial court that the EVSC's practice of charging the $20 fee to the students on the reduced/free lunch and textbook programs did violate substantive due process. *Nagy I,* 808

N.E.2d at 1238 (Bailey, J., dissenting in part).[8]

We decline to hold that a claim which was accepted by the trial court and by at least one judge on this court is "obviously without merit," "obviously frivolous," or "no longer open to discussion." We recognize that education has been held not to be a "fundamental right" for purposes of federal due process jurisprudence. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). But even applying the admittedly deferential standard of "rational basis" review, we cannot say that the Parents' federal due process claim is not substantial. The EVSC charged a fee to students who, by its own standards, were too poor to pay full price for school textbooks and lunches. The EVSC disguised this fee as an "activity" fee despite the fact that the fee was charged to students whether or not they participated in any activity. The EVSC put the funds generated by the fee into its general fund in an effort to balance its budget. We cannot term the Parents' due process challenge to this practice as frivolous or meritless, even if they ultimately might not have succeeded upon the merits.

Again, we need not reach the actual merits of this claim now; all we need do, and all that we now do, is hold that the due process claim was substantial and arose out of a common nucleus of operative fact with the successful state law claim.[9]

*Apportionment Between the Parents*

Although we have thus far, for purposes of simplicity, referred to "the Parents" as the prevailing party, the EVSC claims that the Nagys, and the class they represent, cannot be considered to be prevailing parties at all because only the Bracketts, and the subclass they represent, brought a federal due process claim. According to the EVSC, if the Nagys recovered fees even though they brought no federal claim, they would be "piggybacking" their state claim

---

8. Although our opinion in *Nagy I* was vacated by our Supreme Court's grant of transfer in that case, we think Judge Bailey's conclusion on the due process issue is instructive with regard to the substantiality, but not necessarily the merits, of the Parents' due process claim:

"In the present case, although EVSC has a legitimate interest in funding education and education-related services, its policy of charging a twenty-dollar fee to every student, regardless of the student's means and ability to pay such fee, is *not rationally related to its superlative interest in educating its students*. Indeed, for such a fee policy to survive constitutional scrutiny, it must contain, at the very least, a waiver provision for those students who cannot afford to pay the mandatory fee, potentially including but not limited to those students deemed eligible to participate in other financially subsidized programs, i.e., free or reduced lunch and textbook programs. Accordingly, I would affirm the trial court's determination that imposing the mandatory fee on students who cannot afford to pay such fee is not rationally related to EVSC's interest in raising money for school funding purposes." *Nagy I*, 808 N.E.2d at 1238 (Bailey, J., dissenting in part) (emphasis supplied).

9. The irony is not lost on us that, with respect to an award of attorney fees under Section 1988, it is actually in the Parents' interest for us not to consider the merits of their federal due process claim. This is so because a plaintiff whose federal constitutional claim is actually unsuccessful, i.e. rejected on the merits, cannot, for obvious reasons, be considered the prevailing party for purposes of Section 1988. *See e.g., Mateyko*, 924 F.2d at 828. Thus, if a plaintiff is successful upon his pendent state claim, but it is unnecessary for the court to reach the merits of his federal constitutional claim, he may still recover attorney fees under Section 1988 so long as his federal claim was not "insubstantial." However, if the federal claim *is* considered but rejected, then the plaintiff cannot be considered the prevailing party under Section 1988 even if his non-fee claim is successful.

onto the Bracketts' federal claim. We agree to a certain extent.

Both the Nagys and the Bracketts were represented by the same counsel. The Nagys filed the initial suit on October 4, 2002. The complaint was amended two weeks later to add the Brackett subclass and their federal due process claim. By the timing of the filing of the complaints, it would appear that the Nagys were involved in the case for some period before the Bracketts came to be represented by the same counsel.

After the Bracketts came to be represented by the same counsel as the Nagys, any work done on the state constitutional claim applied equally to both parties. Indeed, we are unable to discern how counsel could have segregated work done on the state constitutional claim between the Nagys and the Bracketts since their state constitutional claims were identical. Thus, the work done by counsel on the state constitutional claim while the Bracketts were represented by the same counsel as the Nagys was done on behalf of both the Nagys and the Bracketts and cannot reasonably be apportioned between them. However, any legal work performed upon the Nagys' state constitutional claim before the Bracketts came to be represented by the same counsel could not logically be charged to the Bracketts; any work on the state constitutional claim done at that time was done on behalf of the Nagys only,[10] and the Nagys had no federal constitutional claim upon which they could be determined to be the prevailing party.

■▬▬▬ We therefore hold that the Nagys may not recover attorney fees for the work, if any, done upon their behalf before the Bracketts came to be represented by the same counsel. We do not see why the Nagys should benefit from the federal constitutional claim which they by themselves could not bring. Since the Bracketts are the ones who brought a substantial federal constitutional claim in addition to their successful state constitutional claim, only they may recover attorney fees for work done upon both claims. The record is not clear, however, as to the extent of the legal work performed, if any, on behalf of the Nagys alone before the Bracketts came to be represented by the same counsel. This issue should be resolved by the trial court upon remand.

### *Determination of Fees*

■▬▬▬ That a party is considered to have "prevailed" brings them only across a statutory threshold; it remains for the trial court to determine what fee is "reasonable." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. As a general rule, in determining attorney fees under Section 1988, the trial court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir.1998) (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). The court may then reduce or augment this lodestar amount by considering twelve so-called *"Hensley"* factors.[11] *Id.*

---

10. We do not deny that any work upon the state constitutional claim performed before the Bracketts came to be represented by the same counsel as the Nagys benefited the Bracketts once they came to be represented. But we do not see how the Parents' counsel could charge the Bracketts for work, if any, already performed at the time the Bracketts came to be represented.

11. The *"Hensley"* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved

The most important of these factors is the "results obtained" by the plaintiff. *Id.*

■ Here, the Bracketts prevailed upon their state constitutional claim, but their federal claim has ultimately been left undecided. This presents the question of whether their attorney fees should include work done upon both the successful state law claim and the undecided federal claim. In this regard, we observe that the federal Supreme Court has rejected any mechanical apportionment of fees based on the success or failure of particular issues. *See S.D. v. Faulkner,* 705 F.Supp. 1361, 1369 (S.D.Ind.1989) (citing *Ill. Welfare Rights Org. v. Miller,* 723 F.2d 564, 566–67 (7th Cir.1983)). Although a plaintiff may not recover fees for time expended pursuing unsuccessful claims which are unrelated to those claims upon which the plaintiff ultimately prevailed, fees upon related claims may be compensable.[12] *Jaffee,* 142 F.3d at 413–14.

■ A claim is considered unrelated to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct which gave rise to the injury on which relief was granted. *Faulkner,* 705 F.Supp. at 1369 (citing *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir. 1984)).

■ The Bracketts' unsuccessful (or more properly "unresolved") federal due process claim is not unrelated to the successful state constitutional claim; both claims were intended to remedy the EVSC's practice of charging the $20 fee. Moreover, the results obtained were excellent—a summary judgment in the Parents' favor which stopped the EVSC from charging the $20 fee to all students, not just those in the Brackett subclass. Since the Bracketts' successful state constitutional claim gave them all they could reasonably ask for, we discern no reason why they should not be awarded reasonable attorney fees for work performed upon both claims. *See Jaffee,* 142 F.3d at 414.

## Conclusion

In summary, we reverse the judgment of the trial court that the Parents, or at least the Bracketts, were not the "prevailing party" for purposes of recovering reasonable attorney fees under Section 1988. Because the Bracketts prevailed in the state constitutional claim and because their related federal due process claim was substantial and arose out of a common nucleus of operative fact with the state constitutional claim, they are "prevailing parties" for purposes of Section 1988 and may recover reasonable attorney fees. Moreover, there has been no suggestion or indication that an award of attorney fees in this case would be unjust. In fact, the EVSC did

and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Lynch v. City of Milwaukee,* 747 F.2d 423, 426 (7th Cir.1984).

12. As recognized by the Seventh Circuit Court of Appeals in *Jaffee,* by focusing more on the overall success of the plaintiff rather than the success or failure of each of the plaintiff's causes of action, the determination of attor-ney fees becomes more in tune with the realities of litigation. 142 F.3d at 414. An attorney has no right to advance a theory which is completely groundless or has no factual bases, " 'but if he presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.' " *Id.* (quoting *Lenard v. Argento,* 808 F.2d 1242, 1246 (7th Cir.1987)).

not challenge the Parents' counsel's calculation of fees at all, other than to claim that the Parents were not the prevailing parties for purposes of Section 1988. The Bracketts are therefore entitled to reasonable attorney fees for work done upon both their federal and state claims. However, any work performed upon the state claim before the Bracketts came to be represented by the same counsel as the Nagys, such work cannot be said to have been performed upon behalf of the Bracketts, and may not be recovered by them as the prevailing party. Although we have addressed certain issues with regard to attorney fees, the ultimate calculation of reasonable attorney fees is a task for the trial court upon remand.

The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

BAILEY, J., and ROBB, J., concur.