CITY OF GARY, Kenneth Goodwin, Calvin Fossett, Defendants-Appellants,

v.

Sam REDMOND a/k/a Samuel H. Redmond, Plaintiff-Appellee.

No. 3–485A101.

Court of Appeals of Indiana, Third District.

Feb. 18, 1986.

Zena Crenshaw, Asst. City Atty., Gary, for defendants-appellants.

Hilbert L. Bradley, Gary, for plaintiff-appellee.

GARRARD, Judge.

Samuel H. Redmond (Redmond) brought a cause of action under the Indiana Tort Claims Act[1] for damages resulting from the demolition of his building located in

---

1. IC 34–4–16.5–1 *et seq.* While Redmond's complaint was brought under the Indiana Tort Claims Act, his complaint contained allegations of constitutional proportion, including: the violation of his rights to due process, equal protection, and the privileges and immunities guaran-

Gary, Indiana. Redmond claimed damages were warranted due to the fact that he received no actual prior notice of the demolition. Redmond brought this action against the City of Gary, Indiana, which by and through its agents, Kenneth Goodwin and Calvin Fossett (collectively referred to as City), had ordered the demolition of Redmond's building, against Moton and Family Wrecking (Moton), whom City had authorized to demolish the building, and against Mose Roberts, who completed the demolition after Moton experienced equipment trouble.

City argued that the building constituted a public safety hazard of an emergency nature permitting demolition without prior notice under The Unsafe Buildings Ordinance of the City of Gary, Indiana, No. 4790. City authorized Moton to undertake the demolition specifying that the demolition was to begin on or before October 4, 1982, and be completed by December 6, 1982. Moton began the demolition in September of 1982 but was unable to finish the job because of equipment problems. The building was not completely demolished until May of 1983 after Moton asked Mose Roberts to complete the job for it.

Entering judgment for Redmond in the sum of One Thousand Two Hundred Dollars ($1,200.00), the trial court concluded that City was liable for failing to give Redmond prior notice of the impending demolition of his building in that no emergency existed obviating the need for prior notice. City does not contest the trial court's determination of liability. Rather, City takes issue with the trial court's award of attorney fees pursuant to 42 U.S.C. Section 1988, entered upon Redmond's subsequent petition.

City presents only one issue for review: Whether Redmond is entitled to attorney fees pursuant to 42 U.S.C. Section 1988 as the prevailing party in a case amounting to a common law tort claim and properly resolved pursuant to the Indiana Tort Claims Act.

The trial court determined that attorney fees were warranted pursuant to 42 U.S.C. Section 1988, which provides in pertinent part:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title [42 U.S.C.], title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000 d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

In *Maher v. Gagne* (1980), 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653, the Supreme Court concluded that an award of attorney's fees under Section 1988 does not necessarily require a plaintiff's success under one of the enumerated sections or titles found in Section 1988. Rather, fees under Section 1988 can be awarded in situations where "the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim or in [a case] in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication." 448 U.S. at 132, 100 S.Ct. at 2576.[2]

teed by the Indiana and Federal Constitutions; the violation of 42 U.S.C. Sections 1983, 1985 and 1986; the violation of the Fourteenth Amendment; and the unconstitutionality of Ordinance No. 4790 under which City acted in demolishing his building without actual, prior notice.

**2.** On the whole the *Maher* case and the allowance of attorney's fees in pendent claim actions has been received with little criticism by the states. *See County Executive of Prince George's County v. Doe* (1984), 300 Md. 445, 479 A.2d 352; *Slawik v. State* (Del.1984), 480 A.2d 636; *Davis v. Everett* (Ala.1983), 443 So.2d 1232; *Jackson v.*

*Inhabitants of Town of Searsport* (Me.1983), 456 A.2d 852; *but see Caputo v. City of Chicago* (1983), 113 Ill.App.3d 45, 68 Ill.Dec. 843, 446 N.E.2d 1240 (giving *Maher* a restricted application).

As to the second portion of the *Maher* test, where a statutory and a substantial constitutional claim are settled favorable to plaintiff without an adjudication, the Indiana Supreme Court has indicated its approval of this concept in *Indiana Bureau of Motor Vehicles v. Zimmerman* (1985), Ind., 476 N.E.2d 114, 118. In *Zimmerman,* however, the case was decided upon the fact that the issues before the trial court had

Recently, the Supreme Court reiterated the rationale behind extending Section 1988 to cover situations where the constitutional claim goes unresolved. In *Smith v. Robinson* (1984), —— U.S. ——, 104 S.Ct. 3457 at 3465, 82 L.Ed.2d 246, the Court stated:

> "Congress' purpose in authorizing a fee award for an unaddressed constitutional claim was to avoid penalizing a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a nonconstitutional claim is dispositive."

■ Since the trial court did not specifically indicate the source of law upon which it entered judgment for Redmond on the liability issue, our review of the attorney's fee award must first focus on the question of whether the trial court's judgment indicates that Redmond was the prevailing party on a claim under one of the civil rights sections or titles explicitly enumerated in 42 U.S.C. Section 1988 or that Redmond was the prevailing party on a wholly statutory, non-civil rights claim. This determination is important since an award of attorney's fees to the prevailing party on a claim recognized under 42 U.S.C. Section 1988 is a discretionary matter with the trial court and is reviewable only for an abuse of discretion. On the other hand, when a party prevails on a wholly statutory, non-civil rights claim, attorney's fees under 42 U.S.C. Section 1988 are available only if the claim is pendent to a *substantial* constitutional claim. *Maher, supra.* If a pendent, substantial constitutional claim is present the matter of awarding attorney's fees again becomes a discretionary matter.

## I.

The trial court entered the following conclusions of law upon which liability was founded:

been rendered moot, negating plaintiff's constitutional challenge.

**3.** None of the other statutory provisions enumerated in 42 U.S.C. Section 1988 are implicated by the trial court's findings of fact or conclusions of law. Although we do not have a complete record of the proceedings on the determination of liability, neither City nor Redmond have advanced an argument that a constitutional violation other than that of due process was implicated in the trial of this matter, although

*"Conclusions of Law*

1. That the law is with the plaintiff and against the defendants on the issue of notice in this cause.

2. That in view of the lengthy lapse of time between the date (September 21, 1982) of authorization given by the Defendant, CITY OF GARY, INDIANA, to the Defendant, MOTON AND FAMILY WRECKING, and the date (May, 1983) when the demolition of the structure in question was completed, there was no emergency situation existing which would obviate the need for prior notice to the plaintiff.

3. That the Court need not determine the collateral issue raised by the plaintiff, that is, whether or not the existing Ordinance No. 4790 (The Unsafe Buildings Ordinance of the City of Gary, Indiana) is unconstitutional in not requiring property owners to receive actual notice of an intended demolition of a structure in an emergency situation.

4. That the defendants are liable to the plaintiff for failure to give notice of the intended demolition of the plaintiff's structure.

5. That the price paid by the plaintiff for such structure, less an amount allocated for the underlying land, or the sum of One Thousand Two Hundred ($1,200.00) Dollars should be paid as damages by the defendants to the plaintiff.

6. That there was no wilful or wanton misconduct on the part of the defendants as would warrant the imposition of punitive damages."

City's failure to give notice was the issue upon which the trial court determined liability. Of the federal statutory provisions enumerated in 42 U.S.C. Section 1988, the only provision under which failure to give prior notice might establish a cause of action is 42 U.S.C. Section 1983.[3] The consti-

tutional issue was whether City deprived Redmond of his property without due process of law in violation of the Fourteenth Amendment. The question thus becomes whether the facts of this case and the conclusions of the trial court are sufficient to support a claim under 42 U.S.C. Section 1983.

In *Parratt v. Taylor* (1981), 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, the Supreme Court enumerated the essential elements of a Section 1983 action as:

"(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."

451 U.S. at 535, 101 S.Ct. at 1912. The first requirement is clearly satisfied in the present case since the City's defense was that they were authorized under Ordinance No. 4790 to have Redmond's building demolished.[4] Turning to the second requirement, we find the discussion of procedural due process in the *Parratt* case to be particularly instructive.

In *Parratt*, a prisoner had ordered a hobby kit through the mail which was negligently lost by a state employee at the institution where the prisoner was incarcerated. The Supreme Court concluded that although the negligent loss of the hobby kit amounted to a deprivation of property, due process was satisfied through the State's tort claim procedure and a claim for relief under 42 U.S.C. Section 1983 *was not* presented. The court emphasized its point with a discussion of those situations in which available post-deprivation remedies could satisfy due process in the face of summary state action adversely affecting property rights:

"We have, however, recognized that postdeprivation remedies made available by the State can satisfy the Due Process Clause. In such cases, the normal predeprivation notice and opportunity to be heard is pretermitted if the State provides a postdeprivation remedy. In *North American Cold Storage Co. v. Chicago*, 211 U.S. 306 [29 S.Ct. 101, 53 L.Ed. 195] (1908), we upheld the right of a State to seize and destroy unwholesome food without a preseizure hearing. The possibility of erroneous destruction of property was outweighed by the fact that the public health emergency justified immediate action and the owner of the property could recover his damages in an action at law after the incident. In *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594 [70 S.Ct. 870, 94 L.Ed. 1088] (1950), we upheld under the Fifth Amendment Due Process Clause the summary seizure and destruction of drugs without a preseizure hearing. Similarly, in *Fahey v. Mallonee*, 332 U.S. 245 [67 S.Ct. 1552, 91 L.Ed. 2030] (1947), we recognized that the protection of the public interest against economic harm can justify the immediate seizure of property without a prior hearing when substantial questions are raised about the competence of a bank's management. In *Bowles v. Willingham*, 321 U.S. 503 [64 S.Ct. 641, 88 L.Ed. 892] (1944), we upheld in the face of a due process challenge the authority of the Administrator of the Office of Price Administration to issue rent control orders without providing a hearing to landlords before the order or regulation fixing rents became effective. *See also Corn Exchange*

---

Redmond's complaint referred to several federal statutory and constitutional violations.

**4.** Ordinance No. 4790 was admitted into evidence in its entirety as Plaintiff's Exhibit 4. Section 3 of the ordinance explicitly adopts and implements the provisions of IC 1971, 18–5–5.-5–1 et seq. [now IC 36–7–9–1 et seq.]. Furthermore, City concedes in its appellate brief that "the trial court's findings of fact and conclu-

sions of law establish that plaintiff was deprived of property under *color of ordinance....*" (Appellant's Brief at 9–10). *See also North American Cold Storage Co. v. Chicago* (1908), 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (municipal ordinance properly adopted under a power conferred by the state legislature, regarded as an act of the state within the scope of the Fourteenth Amendment).

*Bank v. Coler*, 280 U.S. 218 [50 S.Ct. 94, 74 L.Ed. 378] (1930); *McKay v. McInnes*, 279 U.S. 820 [49 S.Ct. 344, 73 L.Ed. 975] (1929); *Coffin Brothers & Co. v. Bennett*, 277 U.S. 29 [48 S.Ct. 422, 72 L.Ed. 768] (1928); and *Ownbey v. Morgan*, 256 U.S. 94 [41 S.Ct. 433, 65 L.Ed. 837] (1921). These cases recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process. As we stated in *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 [94 S.Ct. 1895, 40 L.Ed.2d 406] (1974):

> 'Petitioner asserts that his right to a hearing before his possession is in any way disturbed is nonetheless mandated by a long line of cases in this Court, culminating in *Sniadach v. Family Finance Corp.*, 395 U.S. 337 [89 S.Ct. 1820, 23 L.Ed.2d 349] (1969), and *Fuentes v. Shevin*, 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972). The pre-*Sniadach* cases are said by petitioner to hold that 'the
>
> " 'opportunity to be heard must precede any actual deprivation of private property.' Their import, however, is not so clear as petitioner would have it: they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pretermination hearing where a full and immediate post-termination hearing is provided. The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' *Phillips v. Commissioner*, 283 U.S. 589, 596–597 [51 S.Ct. 608, 611–12, 75 L.Ed. 1289] (1931).'

*Id.* at 611 [, 94 S.Ct. at 1902) (footnote omitted)."

451 U.S. at 538–40, 101 S.Ct. at 1914–15 (footnote omitted).

In the present case, the trial court found that Redmond admitted that at the time of its destruction his building "was merely a shell of a building without windows [or] doors, [and with] a caved-in roof, a pushed-in back wall, and dirt floors." (Finding No. 10, Superior Court of Lake County, *Findings, Conclusions and Judgment*). In spite of the decrepit state of Redmond's building, he has technically suffered a deprivation of property. City claimed that the demolition of Redmond's building without prior notice was warranted because the building constituted a public safety hazard of an emergency nature. City cited Section 15 of Ordinance No. 4790 as authority for their action in emergency situations. While Section 15 of Ordinance No. 4790 does permit the removal of buildings without prior notice, a prerequisite is the existence of an emergency necessitating such action to protect life, safety, or property.[5]

The trial court concluded that the City's authorization of the demolition without prior notice was improper due to the fact that the long delay between authorization and actual completion of the demolition indicated that an emergency situation did not in fact exist. As a result, Redmond was entitled to compensation for the destruction of his building without having been given prior, actual notice. Had the trial court concluded that Redmond's building constituted a public safety hazard of an emergency nature, City's action in authorizing the removal of such structure would have been warranted under Section 15 of Ordinance No. 4790.

 Certainly in emergency situations such as a spreading fire, prior notice to the owner of a building, whose structure is sacrificed in an attempt to contain the conf-

---

5. The constitutionality of Section 15 of Ordinance No. 4790 was determined by the trial court to be a collateral issue that it need not decide, since the court concluded no emergency existed warranting application of Section 15. The constitutionality of Section 15 is discussed at length in Section II of this opinion.

lagration, is impracticable. However, the owner is not without recourse and is entitled to an impartial judicial determination of the propriety of a city's action accomplished without notice due to the alleged emergency situation. *See North American Cold Storage v. Chicago* (1908), 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (unwholesome food, public health emergency justified immediate action, damages could be recovered after the destruction in an action at law if the destruction was erroneous); *Leppo v. Petaluma* (1971), 20 Cal. App.3d 711, 97 Cal.Rptr. 840 (in emergency situations city may act summarily but must be prepared to establish the existence of the emergency by a preponderance of the evidence); *Jarvis v. Baltimore* (1968), 248 Md. 528, 237 A.2d 446 (summary destruction not justified absent finding of emergency situation); *Newport v. Rosing* (Ky. 1958), 319 S.W.2d 852 (city liable for destruction of property summarily where no emergency justifying exercise of the police power existed); *Colvill v. Fox* (1915), 51 Mont. 72, 149 P. 496 (statute authorizing summary destruction in emergency not violative of due process so long as statute does not deny owner the right to test the propriety of the action at some time); *Prichard v. Commissioners of Morganton* (1900), 126 N.C. 908, 36 S.E. 353 (owner of house which municipality summarily destroyed to prevent the spread of smallpox receives due process in compensatory action to determine whether destruction was a reasonably necessary measure); *Smith v. Irish* (1899), 37 App.Div. 220, 55 N.Y.S. 837 (board of health liable for summary removal of part of a building due to belief it was likely to fall and injure members of the public only if such belief was not justified); *Conwell v. Emrie* (1850), 2 Ind. 35 (liability for destruction of building to prevent spread of fire dependent upon whether defendant had reasonable grounds to believe destruction was necessary). *See also City of Rapid City v. Boland* (S.D.1978), 271 N.W.2d 60; 1 Nichols, *Eminent Domain*, Section 1.43 [1] and [2]. In conclusion, procedural due process is not offended where a person is summarily deprived of his property in an emergency situation so long as an adequate post-deprivation process exists by which the propriety of such action can be adjudicated.

While Redmond has suffered a deprivation of property, he took advantage of the opportunity for a post-deprivation determination of the propriety of the City's action through the tort claims process. We conclude then that the Indiana Tort Claims Act gave Redmond the opportunity for an ultimate judicial determination of liability, satisfying the requirements of procedural due process. Hence, as in *Parratt*, the facts of this case do *not* present a claim for relief under 42 U.S.C. Section 1983. Thus, Redmond was not entitled to an award of attorney's fees as a prevailing party on a federal claim under 42 U.S.C. Section 1988. Redmond instead prevailed on his "wholly statutory, non-civil rights claim," that being his claim under the Indiana Tort Claims Act. Our inquiry must turn then to whether Redmond's successful tort claim was pendent to a substantial constitutional claim.

## II.

The trial court did intimate that Redmond had presented a constitutional question regarding Ordinance No. 4790. In its third conclusion of law the trial court indicated:

"3. That the Court need not determine the collateral issue raised by the plaintiff, that is, whether or not the existing Ordinance No. 4790 (The Unsafe Buildings Ordinance of the City of Gary, Indiana) is unconstitutional in not requiring property owners to receive actual notice of an intended demolition of a structure in an emergency situation."

The constitutionality of Ordinance No. 4790's emergency procedure section is the only collateral issue implicated by the trial court's findings and conclusions. Restated, the constitutional issue focuses on procedural due process and the question of whether prior, actual notice is constitutionally required before summary action can be

taken to remove a building in an emergency situation. To support an award of attorney's fees under Section 1988 this constitutional issue must be *substantial. Maher, supra.*

The standard by which substantiality is to be determined was set forth in a report of the Committee on the Judiciary of the House of Representative to be that standard employed by the Supreme Court in *Hagans v. Lavine* (1974), 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577. *See* H.R.Rep. No. 94–1558, 94th Cong., 2d Sess., p. 4, n. 7. In *Hagans,* the substantiality standard was utilized for deciding:

"... whether a federal constitutional issue is sufficiently meritorious to confer jurisdiction on a federal court under 28 U.S.C. Section 1343(3), thereby allowing the court to entertain a state law claim as a matter of pendent jurisdiction. Under the *Hagans* standard, an issue is not deemed 'insubstantial' unless it is 'absolutely devoid of merit ... [or] 'wholly insubstantial' ... [or] 'plainly insubstantial' [or] 'no longer open to discussion.' *Hagans v. Lavine, supra,* 415 U.S. at 536–537, 94 S.Ct. at 1378–1379. This standard, employed in the great majority of the cases involving a substantiality issue under Section 1988, has been characterized as a 'minimal test of 'substantiality.''' Wolf, *Pendent Jurisdiction, Multi-Claim Litigation, and the 1976 Civil Rights Attorney's Fees Awards Act,* 2 W. New Eng.L.Rev. 193, 239 (1979)."

*County Exec., Prince George's Co. v. Doe* (1984), 300 Md. 445, 479 A.2d 352, 360. The Supreme Court in *Hagans,* quoting from previous decisions, stated that:

"A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'"

*Hagans v. Lavine, supra,* 415 U.S. at 538, 94 S.Ct. at 1379.

In addition to the cases outlined in the previous section concerning the constitutionality of summary governmental action in emergency situations, the Indiana Supreme Court has cogently addressed this issue. In *Pittsburgh, etc. R. Co. v. State* (1913), 180 Ind. 245, 102 N.E. 25, the Indiana Supreme Court concluded that the police power extends to allow confiscation and destruction of property by the government, without being violative of due process, so long as the destruction has a just relation to the protection of public health, welfare, and morals. The Supreme Court reiterated this concept in *State ex rel. Mavity v. Tyndall* (1947), 225 Ind. 360, 365, 74 N.E.2d 914, concluding:

"The general assembly has a duty to enact laws providing for the general welfare and safety of the people within the state, and such laws, if reasonable, will not be in conflict with guaranteed rights of the individual. Property or property rights may not be taken or destroyed under the guise of the police power or of a police regulation, unless the taking or destruction has a just relation to the protection of the public health, welfare, morals or safety. Unless it affirmatively appears by the act, or the history of its enactment that it has no such just relation, the police power extends even to the taking and destruction of property. It will be presumed that the act is reasonable, unless the contrary appears from facts of which the courts will take notice." (citations omitted)

*See also Combs v. City of New Albany, Floyd County* (1966), 139 Ind.App. 641, 218 N.E.2d 349, 351; 5A I.L.E. *Constitutional Law* Section 445 (1984), p. 426; 56 Am. Jur.2d *Municipal Corporations, Counties, and Other Political Subdivisions,* Section 437 (1971) at p. 483 ("It is well settled that the possession and enjoyment of all private rights are subject to a reasonable exercise of municipal police power essential to the safety, health, peace, good order, and morals of the community."); 16A Am.Jur.2d *Constitutional Law,* Sections 587, 588 (1979) at p. 515 ("Where necessary to insure the public safety, the legislature may

under its police power authorize municipal authorities summarily to destroy property without legal process or previous notice to the owner. So far as property is dangerous to the safety or health of the community, due process of law may authorize its summary destruction."); Annot., 14 A.L. R.2d 73 (1950).

Section 15 of Ordinance No. 4790 outlines the emergency procedure applicable to summarily remove an immediate danger:

"Section 15. Emergency procedure.— If in any instance the Building Commissioner shall find that it is necessary to take emergency action with reference to unsafe premises in order to protect life, safety, or property, the Building Commissioner may cause such action as is necessary to protect life, safety, or property to be performed without issuing an order or giving notice.

Such emergency action shall be limited to removing any immediate danger. The costs incurred by the Building Commissioner in taking or having such action taken may be recovered against the persons who have a fee interest or life estate interest in the unsafe premises by the filing of a civil action in Lake County Circuit or Superior Court by the City of Gary, through its agent, the Building Commissioner. Costs of such an action shall not be borne by the City of Gary."

The section expressly requires a determination by the Building Commissioner that emergency action is necessary in order to protect life, safety, or property before such action may be undertaken "without issuing an order or giving notice." The necessary "just relation to the protection of the public health, welfare, morals or safety" evincing a reasonable extension of the police power is implicitly required before summary emergency action can be justified. *See Pittsburgh, etc., R. Co. v. State, supra; State ex rel. Mavity v. Tyndall, supra;* 16A Am.Jur.2d *Constitutional Law,* Section 588. The constitutionality of Section 15 cannot be seriously contested.

■ Due process is clearly not offended where in an emergency situation necessitating quick action by the municipality a property owner does not receive prior notice of the demolition or destruction of his property. On the contrary, the Supreme Court indicated in *Parratt v. Taylor, supra,* that:

"[T]he necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process."

451 U.S. at 539, 101 S.Ct. at 1914–15. Redmond's success pursuant to the Indiana Tort Claims Act establishes the existence of the means by which the propriety of the City's action can be assessed and procedural due process is satisfied through this post-deprivation process.

■ In light of the foregoing, it is clear that Redmond's successful tort claim was not pendent to a substantial federal constitutional issue which would warrant an award of attorney's fees under 42 U.S.C. Section 1988. *Maher, supra.* As Redmond has not prevailed on a claim enumerated under 42 U.S.C. Section 1988 and he has not presented a substantial constitutional claim pendent to his successful tort claim, an award of attorney's fees based on 42 U.S.C. Section 1988 was not authorized. For this reason the trial court's award of attorney's fees in this case must be reversed.

Reversed.

STATON, P.J., and HOFFMAN, J., concur.