**Joel SILVERMAN, in his official capacity as Commissioner of the Indiana Bureau of Motor Vehicles, Appellant–Plaintiff,**

v.

**Miguel VILLEGAS, Betty Doe, Mary Smith, on their own behalf and on behalf of a class of those similarly situated, Appellees–Defendants.**

No. 49A02–0708–CV–754.

Court of Appeals of Indiana.

Sept. 30, 2008.

Rehearing Denied Dec. 3, 2008.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Kenneth J. Falk, ACLU of Indiana, Richard Shevitz, Scott Gilchrist, Cohen & Malad LLP, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

ROBB, Judge.

*Case Summary and Issue*

Three illegal aliens instituted a class action against the Commissioner of the Indiana Bureau of Motor Vehicles ("BMV") claiming they were unable to obtain State of Indiana driver's licenses and/or identification cards because of identification requirements implemented by the BMV on July 15, 2002. In a prior appeal, this court held that the identification requirements constituted an administrative rule, which was void because it was not promulgated pursuant to the Indiana Administrative Rules and Procedures Act ("ARPA"). We therefore instructed the trial court to enter summary judgment in favor of the plaintiffs. *Villegas v. Silverman*, 832 N.E.2d 598, 610 (Ind.Ct.App. 2005), *reh'g denied, trans. dismissed* ("*Vil-*

*legas I* "). The trial court entered judgment in the plaintiffs' favor on their complaint and granted the plaintiffs' motion for attorney fees and costs as prevailing parties pursuant to 42 U.S.C. § 1988 ("section 1988"), ordering the BMV to pay such attorney fees and costs in the amount of $112,468.43. The BMV appeals the trial court's grant of this motion, raising for our review the issue of whether the plaintiffs are prevailing parties pursuant to section 1988 for the purpose of awarding fees. Concluding that the plaintiffs are prevailing parties and that their success in having the identification rule voided merits an award of attorney fees, we affirm.

### Facts and Procedural History [1]

As stated in our previous opinion, the underlying facts are these:

On Friday, July 12, 2002, the BMV announced that effective Monday, July 15, 2002, applicants for Indiana driver licenses, permits, and identification cards would have to present certain documentation proving their identity before obtaining such cards. The new identification requirements are vastly different from the previous ones. The BMV decided to tighten its requirements because of recent increases in identity fraud. The BMV announced its change in the identification requirements by press conference and by publication. Before the BMV's announcement of this change, there was no promulgation pursuant to the ARPA.

* * *

The plaintiffs in this case, all illegal aliens, filed a complaint for declaratory and injunctive relief against the Commissioner of the BMV alleging that the new identification requirements have prevented them from obtaining Indiana driver licenses and/or identification cards. Specifically, the complaint alleges:

This is a class action complaint challenging the defendant's new rule for obtaining driver's licenses, learner's permits, and state identification in Indiana. In contrast to earlier practice which properly interpreted Indiana law as only requiring applicants to demonstrate their identity, the new rule, which has been implemented without notice or rule-making, requires applicants to, among other things, demonstrate that they possess a valid United States passport or acceptable documentation from the Immigration and Naturalization Service (hereinafter "INS"), regardless of proof of identity. The rule, which makes it impossible for certain persons to obtain a license, permit or state identification, regardless of proof of identity, is both unconstitutional and unlawful.

The facts surrounding the individual plaintiffs are as follows. Miguel Villegas entered the United States without documentation. He does not have a social security number. He had an Indiana identification card, but it expired. He also wants a driver license. "Betty Doe" entered the United States without inspection and documentation. She does not have a social security number. Betty Doe had an Indiana driver license, but it was stolen. She requests that her driver license be reissued. Likewise, "Mary Smith" entered the United States without inspection and documentation and does not have a social security num-

---

1. We heard oral argument on July 8, 2008, in Indianapolis. We thank counsel for their helpful presentations.

ber. Her goal is to obtain an identification card and ultimately a driver license.

The complaint was filed in August 2002—approximately one month after the new identification requirements went into effect—but has been twice amended, the last time in June 2003. The plaintiffs also filed a motion for class certification. In March 2004, the plaintiffs filed a motion for summary judgment, and the BMV responded by filing a cross-motion for summary judgment. Following a hearing, the trial court issued Findings of Fact, Conclusions of Law and Judgment in September 2004. Specifically, the trial court concluded that the plaintiffs were not eligible for driver licenses and therefore there was "no standing." The trial court also concluded that it did not have the power to review the BMV's identification requirements and that there was no merit to the plaintiffs' constitutional arguments. As a result, the trial court held that the "plaintiffs shall take nothing by way of their complaint, and this case be, and is hereby, dismissed." In addition, the trial court granted the plaintiffs' motion for class certification in a nunc pro tunc order. In that order, the trial court defined the class as follows:

> [A]ll current and future persons in Indiana who are, or who will be, required by defendant to produce information concerning their citizenship or immigration status in order to obtain an Indiana driver's license or permit or a state identification card, but who are, or will be, unable to produce the identification mandated by the Indiana Bureau of Motor Vehicle's non-promulgated identification requirements.

832 N.E.2d at 601–04 (citations and footnotes omitted). On appeal, we held that the BMV's new identification requirements constituted an administrative rule and the BMV therefore had to comply with the rulemaking procedures outlined in ARPA, see Ind.Code § 4–22–2 et seq., including notice, public hearings, and review by executive branch officials. *Villegas,* 832 N.E.2d at 609–10. Because the BMV did not comply with those procedures, the identification requirements were void and without effect and the trial court erred in entering summary judgment in favor of the BMV. *Id.* at 610. We remanded the case to the trial court "with instructions for the trial court to enter summary judgment in favor of the plaintiffs." *Id.*

The BMV filed a petition for rehearing with this court; the petition was denied. The BMV then filed a petition to transfer to the Indiana Supreme Court simultaneously with a motion for stay of decision on the petition to transfer. The BMV sought a stay "in order to permit it to complete its adoption and promulgation of a rule relating to identification requirements." Order to Show Cause, No. 49A02–0410–CV–823 (Ind., Feb. 6, 2006). When the additional time the BMV sought had passed, the supreme court issued an order to show cause requiring a status report. The BMV responded that an identification rule had gone through the adoption/promulgation process and had become effective on February 2, 2006. "As the unpromulgated identification procedures that were challenged by the Plaintiffs/Appellants in this lawsuit are no longer in effect," appellants' appendix at 106, the BMV requested that the petition to transfer be dismissed as moot. The supreme court dismissed the transfer petition on March 2, 2006, and this court's opinion was certified that same day.

The plaintiffs then filed a motion in the trial court to enter judgment in their favor

pursuant to this court's instruction, which the trial court granted:

IT IS THEREFORE ORDERED that plaintiffs are awarded summary judgment in this cause on their claim that the identification requirements for licenses, permits and state identification cards implemented by defendant in July of 2002 are unlawful, void and without effect because defendant failed to promulgate the requirements as required by the Indiana Administrative Rules and Procedures Act, Indiana Code § 4–22–2 *et seq.*

Appellants' App. at 125. The plaintiffs subsequently filed a motion for attorney fees and costs pursuant to section 1988, contending they had prevailed on their state law claims, their state and federal claims arose out of a common nucleus of operative facts, and the federal claims were substantial. The trial court agreed:

[T]he Court having considered this matter, and being duly advised, finds that plaintiffs are prevailing parties pursuant to 42 U.S.C. § 1988 and they have established their entitlement to their attorneys' fees and costs as set out in their Motion, and,

IT IS THEREFORE ORDERED that the plaintiffs are awarded their costs and fees . . . .

Appellants' App. at 11A. The BMV then initiated this appeal.

### Discussion and Decision

The plaintiffs claimed, and the trial court agreed, that they are entitled to attorney fees and costs pursuant to section 1988. The relevant portion of section 1988 states:

(b) Attorney's fees

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

The BMV argues that the plaintiffs are not "prevailing parties" under section 1988 and are therefore not entitled to recovery of attorney fees.

### I. Standard of Review

■ The parties agree that the standard of review in this case is de novo. Although we ordinarily review a trial court's decision regarding an award of attorney fees under section 1988 for an abuse of discretion, *Daffron v. Snyder*, 854 N.E.2d 52, 55 (Ind. Ct.App.2006), when the trial court makes a determination regarding attorney fees under section 1988 as a result of applying a principle of law, we review the decision de novo, *Nagy v. Evansville–Vanderburgh Sch. Corp.*, 870 N.E.2d 12, 18 (Ind.Ct.App. 2007), *trans. denied.*

### II. Section 1988 Summary

■ In *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the United States Supreme Court reaffirmed the "American Rule" that each party to a lawsuit ordinarily pays its own attorney fees unless there is express statutory authorization to the contrary. Congress enacted section 1988 in response, authorizing the award of reasonable attorney fees to prevailing parties in civil rights litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The purpose of section 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. See id. Although section 1988 gives trial courts discretion to award attorney fees to the prevailing party, cases interpreting section 1988 have limited that discretion by holding that "a prevailing party should ordinarily recover attorney fees unless

special circumstances exist that would render such an award unjust." *Nagy*, 870 N.E.2d at 18; *cf. Farrar v. Hobby*, 506 U.S. 103, 119, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("Section 1988 expressly grants district courts discretion to withhold attorney's fees from prevailing parties in appropriate circumstances....") (O'Connor, J., concurring).

In order to qualify for an award of attorney fees, a plaintiff must be a "prevailing party." "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12, 113 S.Ct. 566. A "prevailing party" is one who has been awarded some relief by the court. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). "[E]nforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604.[2]

Finally, a section 1988 award of attorney fees does not necessarily require that the plaintiff succeed on a constitutional claim. Section 1988 fees may be awarded where the plaintiff prevails "on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim," *Maher v. Gagne*, 448 U.S. 122, 132, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), as long as the non-fee claim arises out of a "common nucleus

of operative fact," *id.* at 132 n. 15, 100 S.Ct. 2570. Such a fee award "furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues." *Id.* at 133, 100 S.Ct. 2570 (citation omitted).

### III. The Plaintiffs as "Prevailing Parties"

The plaintiffs' complaint made the following claims regarding the BMV's identification rule:

**Factual Allegations**

\* \* \*

21. Effective July 15, 2002, the BMV changed the former requirement that identity be proven and introduced new requirements which went beyond mere identification and instead required, among other things, that only citizens or persons with certain immigration statuses could apply for a license or identification card. Additionally, for the first time, any person seeking a license or identification [card] had to have a social security number in his or her own name.

\* \* \*

23. The new requirements were imposed without rule-making or the formal promulgation of regulations.

24. On September 16, 2002, [the BMV] announced modifications to the July 15, 2002 requirements which went into effect on September 30, 2002....

\* \* \*

---

**2.** *Buckhannon* addressed the issue of whether "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" is a prevailing party. 532 U.S. at 600, 121 S.Ct. 1835. The Court held that the term "prevailing party" does not authorize an award of attorney fees without a corresponding alteration in the legal relationship of the parties, and because a defendant's voluntary change in conduct "lacks the necessary judicial imprimatur on the change," *id.* at 605, 121 S.Ct. 1835, the plaintiffs were not entitled to an award of attorney fees.

29. The September 30, 2002 Rule has been, and continues to be, imposed without rule-making or formal promulgation of regulations.

\* \* \*

### Statutory Claims

55. Defendant's September 30, 2002 rule imposes a requirement that only persons who have a valid immigration status may be considered for an Indiana driver's license, permit or identification card even if they are Indiana residents. This requirement is not contained in Indiana law and defendant is precluded from creating such a requirement since it alters the substantive law which governs the BMV. The rule change is therefore unlawful.

56. Even if defendant could effect the changes in the law set out in the September 30, 2002 Rule, the rule represents substantive change and therefore cannot occur without rule-making that satisfies the requirements of Ind.Code § 4–22–2–3, et seq. Inasmuch as the rule change was implemented without any rule-making whatsoever, it is unlawful.

### Federal Constitutional Claims

57. To the extent that the September 30, 2002 rule discriminates against those who are residents of Indiana and who can prove their identities, but who are unable to obtain the information demanded by the rule, the rule is irrational and arbitrary and furthers no legitimate state goal and violates both the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

58. To the extent that the September 30, 2002 Rule gives defendant the ability to determine which non-citizens have "acceptable INS documentation" the rule violates the Supremacy Clause, U.S. Constitution, Art. VI.

### State Constitutional Claims

59. The disparate treatment accorded by the September 30, 2002 Rule, as summarized above, also violates Art. I, § 23 of the Indiana Constitution since it is not reasonably related to inherent characteristics distinguishing the putative class.

**Requested relief**

WHEREFORE, plaintiffs request that this Court:

\* \* \*

2. Enter a declaratory judgment that the defendant has violated Indiana law and the United States and Indiana Constitutions as specified above.

3. Enter a preliminary injunction, later to be made permanent, enjoining the September 30, 2002 Rule.

Appellants' App. at 74–80 (Third Amended Class Action Complaint for Declaratory and Injunctive Relief).

The BMV contends that the plaintiffs are not prevailing parties in this litigation and that the trial court's award of attorney fees pursuant to section 1988 is erroneous as a matter of law for three reasons: 1) the trial court determined that the plaintiffs had suffered no injury with respect to their federal claims and because this determination was undisturbed on appeal, the plaintiffs did not prevail on their federal claims; 2) the plaintiffs' federal claims are not "substantial" and do not have a "common nucleus of operative fact" with pendent state statutory claims; and 3) the plaintiffs failed to obtain their objective with respect to their federal claims. We will address each of the BMV's contentions in turn. As noted above, we begin from the premise that attorney fees are to be

awarded unless otherwise unjust. *See Nagy*, 870 N.E.2d at 19.

### A. Effect of *Villegas I* on Original Trial Court Order

■ The trial court's original decision on the plaintiffs' complaint included the following conclusions:

8. Illegal aliens, such as plaintiffs, are not a suspect class implicating constitutional scrutiny under the complementary equal protection clause of the United States Constitution and privileges and immunities clause of the Indiana Constitution. Illegal, or undocumented, aliens do not have the immutable characteristic of a truly suspect class because their status is the product of conscious, indeed, unlawful action.

9. The plaintiffs cannot demonstrate any injury recognized by the above said Constitutional provisions based on their illegal status in this country.

10. Where there is no recognized injury, there is no standing. . . .

Appellants' App. at 99. On appeal, the plaintiffs argued, *inter alia*, that the new identification requirements violated the Due Process Clause, the Equal Protection Clause, and the Supremacy Clause of the United States Constitution. *Villegas*, 832 N.E.2d at 610 n. 15. We decided the case on the rule-making issue, however, and declined to address the constitutional arguments: "Because the requirements are void and without effect, we do not address these constitutional arguments. To do so would be to render an advisory opinion. We have no way of knowing whether the BMV in the future will promulgate the same identification requirements or different ones." *Id.*

■ The BMV argues the plaintiffs did not prevail on their federal claims because the trial court made a determination against them and this court "specifically took no action to invalidate the previous determination" of the trial court, appellants' brief at 10, thus allowing the trial court's conclusion with respect to the federal claims to stand. Section 1988 fees cannot be awarded where the plaintiff prevails on a state law claim but a federal law claim is decided against her. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 285, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (determining on appeal of district court's decision in favor of the plaintiffs on state and federal claims that the plaintiffs were not entitled to relief on their federal claim and therefore were not entitled to attorney fees and costs under section 1988). The BMV cites *Luria Bros. & Co. v. Allen*, 672 F.2d 347 (3d. Cir.1982), to support its position that the original ruling of the trial court against the plaintiffs on their federal claims remained undisturbed after *Villegas I*. In *Luria Bros.*, the Third Circuit considered a district court ruling in favor of a plaintiff on federal constitutional and state statutory claims and its award of section 1988 fees. The Third Circuit reversed the district court on the federal constitutional claim, affirmed the judgment on the state claim, and reversed the award of attorney fees. *Id.* at 349. The distinction between *Luria Bros.* and *Bray*, and this case, however, is that in *Luria Bros.* and *Bray* there were specific appellate determinations against the plaintiffs on the merits of their federal claims. Here, the plaintiffs' federal claims were specifically left undecided by the appellate court.[3]

---

**3.** The BMV also argues that the plaintiffs could have requested transfer as to the federal constitutional issue left unanswered by this court, but they did not do so and "[i]t is now much too late for the Plaintiffs to seek further review." Brief of Appellants at 12–13. On the basis of this court's decision, however, there was no reason for the plaintiffs to seek transfer: the practical result of this court's opinion was that there was no rule imposing

Moreover, the trial court did not make a determination on the merits of the federal claims, but merely determined that the plaintiffs had no standing to raise the claims.[4]

 In general, a trial court's judgment that has been reversed is a nullity, and a reversal returns the parties to the position they occupied prior to the judgment. *Tioga Pines Living Ctr., Inc. v. Indiana Family and Soc. Servs. Admin.*, 760 N.E.2d 1080, 1088 (Ind.Ct.App.2001), *trans. denied; see also Doughty v. State Dep't of Pub. Welfare*, 233 Ind. 475, 477–78, 121 N.E.2d 645, 646 (1954) ("If the appellate tribunal finds the judgment was erroneous and reverses it, such judgment is forthwith vacated and set aside and no longer remains in existence. The parties are then restored to the position they held before the judgment was pronounced and must take their places in the trial court at the point where the error occurred . . . ."). The plaintiffs point to several section 1988 cases in which a trial court found against plaintiffs on both state and federal claims, an appellate court reversed on state law grounds, and it was subsequently determined that the plaintiff was a prevailing party entitled to section 1988 fees. *See, e.g., Maryland Green Party v. State Bd. of Elections*, 165 Md.App. 113, 884 A.2d 789, 798 (2005) (addressing issue of whether the plaintiff's federal claim "was decided, for purposes of section 1988, when it was determined adversely by the circuit court on

summary judgment but, on appeal, was not addressed in the appellate opinion that reversed only on a state law ground" and holding that the appellate court's reversal rendered the federal claim undecided for purposes of section 1988), *cert. denied*, 390 Md. 501, 889 A.2d 418 (2006).

The general principles announced by our caselaw regarding the effect of an appellate reversal and section 1988–specific case law from other jurisdictions are contrary to the BMV's argument that our decision in *Villegas I* had no effect on the trial court's earlier determination regarding the plaintiffs' federal claims. We agree with the plaintiffs that the federal claims were "undecided" when the trial court issued its attorney fee order. We must now consider whether the plaintiffs' success on their state law claim entitles them to "prevailing party" status for purposes of section 1988 attorney fees.

### B. Substantiality

 The BMV argues that even if the plaintiffs' federal claims are undecided, they do not meet the test for "substantiality." A constitutional claim is "substantial" for this purpose unless it is "so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion." *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). "A claim is insubstantial only if its unsoundness so clearly results from the previous decisions of this

---

new identification requirements on those seeking driver's licenses or identification cards, and therefore, there was no action upon which the plaintiffs could base a claim of a constitutional violation. Moreover, the plaintiffs are not seeking review of the merits of their federal constitutional claims by claiming entitlement to section 1988 fees.

4. The BMV seems to acknowledge this later in its brief, stating that "No determination has ever been made that suggests that the BMV's

identification requirements deprived the Plaintiffs of due process or equal protection. No determination has been made that the requirements in some fashion violate the supremacy clause because they infringe upon the INS's legal authority." Appellant's Brief at 19. At the very least, this statement seems to be in conflict with the BMV's argument that the federal claims were decided adversely to the plaintiffs by the trial court.

court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Id.* at 538, 94 S.Ct. 1372 (quotation omitted). This standard is a "minimal" one. *City of Gary v. Redmond,* 489 N.E.2d 543, 549 (Ind.Ct.App. 1986). We need not address the actual merits of a claim in order to determine whether it meets the substantiality test. *Nagy,* 870 N.E.2d at 22. "All we need determine is whether the [federal claim] was 'obviously without merit,' 'obviously frivolous,' or 'no longer open to discussion.'" *Id.* (quoting *Hagans,* 415 U.S. at 537, 94 S.Ct. 1372).

The BMV argues that "it is not likely that the courts would find any merit in the federal claims that were advanced by the Plaintiffs in this case," br. of appellants at 19, citing footnote 11 of *Villegas I* in which we acknowledged new federal legislation requiring state-issued driver's licenses and identification cards to include social security and lawful status information in order to be accepted by the federal government for any official purpose. 832 N.E.2d at 606 n. 11. As we also noted, however, "[t]his new federal law has no impact on the BMV's current system," *id.,* and its enactment does not necessarily mean that the issue of whether requiring such information is constitutional is "no longer open to discussion." The BMV also argues that the plaintiffs' federal claims are insubstantial because the trial court determined that they were. As noted in Section III.A., *supra,* the trial court's determination is a nullity. Moreover, the trial court decided the plaintiffs' federal constitutional claims on the basis of standing, not on their merits.

The plaintiffs claimed that the BMV's new identification rule violated the due process, equal protection, and supremacy clauses of the United States Constitution. The BMV has not cited, and our own research has not disclosed, any case law from this jurisdiction or others with a holding foreclosing the plaintiffs' claims. *Cf. City of Gary,* 489 N.E.2d at 550 (holding that constitutionality of ordinance allowing emergency action by building commissioner in removing any immediate danger caused by unsafe premises "cannot be seriously contested" and plaintiff's constitutional claim is therefore not substantial for section 1988 purposes where case law has established constitutionality of summary governmental action in emergency situations). That is not to say the plaintiffs would necessarily have prevailed on the merits of their claims. However, when judging the plaintiffs' claims by the "admittedly ... rather low standard," *Nagy,* 870 N.E.2d at 22, of substantiality set forth in *Hagans,* the constitutional claims at issue cannot be said to be either so frivolous or so insubstantial as to prevent prevailing party status. See *Doe v. Edgar,* 1989 WL 91805 at *3 (N.D.Ill., Aug.4, 1989) (declining to grant the state's motion for summary judgment on undocumented aliens' class action alleging that an Illinois statute which required every application for a driver's license to include the applicant's social security number violated the equal protection clause by making it impossible for members of the class—and only that class—to obtain driver's licenses).

C. Common Nucleus of Operative Fact

 The BMV also argues that the plaintiffs' federal claims do not share a "common nucleus of operative fact" with the successful state law claim.[5] Claims

---

**5.** The BMV quotes language from *Nagy* regarding when a claim is "unrelated to a successful claim." See Appellant's Brief at 17.

The quoted language is from a section of the opinion concerning the determination of an appropriate fee upon having already deter-

arise from a common nucleus of operative fact where fee-supporting claims are so interrelated with non-fee claims that plaintiffs would ordinarily be expected to try them all in one judicial proceeding. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "Courts have taken an extremely liberal view on nearly every interpretative question that has arisen thus far under [section] 1988." *Gates v. Collier,* 616 F.2d 1268, 1275 (5th Cir.1980).

The BMV argues that "there is no real factual connection between the state rule adoption claim and the federal constitutional claims. . . . [A] claim that identification requirements need to be adopted as a rule according to state law does not automatically implicate the constitutionality of the substance of any identification requirements." Reply Brief of Appellants at 6–7. The BMV is correct that the plaintiffs' adjudicated state claim concerned the process behind the identification rule, whereas the undecided constitutional claims concerned the substance of the rule. However, all of the plaintiffs' claims arise from the BMV's adoption of a rule with new identification requirements for obtaining driver's licenses and identification cards. All of the plaintiffs' claims sought to invalidate the rule, for either procedural or substantive reasons. Accordingly, we hold that the non-fee claim arose out of the common nucleus of operative facts implicated by the constitutional claims. *See California State Outdoor Advertising Assoc., Inc. v. California,* 2006 WL 662747 at *9 (E.D.Cal., Mar.16, 2006) (holding that plaintiffs' claim that a billboard permit renewal fee imposed by the state department in charge of regulating outdoor advertising without following the rulemaking provisions of the state's administrative procedures act had a common nucleus of operative fact with the plaintiffs' First Amendment claim because both arose from defendants' collection of permit renewal fees pursuant to an invalid fee-setting regulation and both sought to invalidate the fee set by the defendants; therefore, plaintiffs' success on the administrative claim entitled them to section 1988 fees).[6]

## IV. Reasonable Attorney Fee

■ Although the BMV never specifically argues the reasonableness of the fee award by the trial court, an overarching argument throughout its brief and at oral argument was that the plaintiffs, while winning a minor point, nevertheless lost the battle. The BMV acknowledges the plaintiffs' success on their claim that the identification requirements were unlawful for not being formally adopted as a rule; however, the BMV notes that because the plaintiffs' constitutional claims were not affirmatively decided in their favor, and the BMV has now properly promulgated the identification requirements as a rule, the plaintiffs have failed to achieve the objective of their constitutional claims—that is, they are still unable to obtain driver's licenses or identification cards. The BMV argues that the plaintiffs' victo-

---

mined that the plaintiffs were prevailing parties. *See Nagy,* 870 N.E.2d at 24–25. Further, the BMV's argument focuses primarily on the results the plaintiffs achieved, which again is an argument more suitable to the issue of determining a reasonable fee. We will address that issue in Section IV, *infra.*

**6.** Although the dissent interprets our decision as holding that "a claimant need only ad-

vance 'some' type of constitutional claim and succeed on a non-related state claim" to become a prevailing party, slip op. at 24, we have specifically determined in the foregoing discussion that the plaintiffs' constitutional claims were sufficient to meet the substantiality test and to show a common nucleus of operative fact.

ry on their state rule-making claim is so nominal in relation to the relief sought by the complaint that they should not be considered prevailing parties for section 1988 purposes.

Although the Supreme Court has previously noted that "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that even the 'generous formulation' [of the term 'prevailing party'] has not been satisfied," *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989), more recently, the Supreme Court has clarified that "the prevailing party inquiry does not turn on the magnitude of the relief obtained," *Farrar*, 506 U.S. at 114, 113 S.Ct. 566; *see also Garland*, 489 U.S. at 789, 109 S.Ct. 1486 (noting that the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to the eligibility for a fee award at all). Thus, the BMV's argument with respect to the results of the litigation is more accurately described as a challenge to the reasonableness of the fee awarded by the trial court.[7]

The "generous formulation" of the prevailing party standard "brings the plaintiff only across the statutory threshold." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The court must still determine what fee is reasonable. *Id.* As a general rule, the starting point is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Nagy*, 870 N.E.2d at 24. Other considerations may then lead the court to adjust the fee upward or downward. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. One of these considerations is the results obtained, especially when the plaintiff has made multiple claims but has succeeded on only some of them. *Id.*

[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substan-

7. In *Daffron,* this court considered a trial court's order denying a request for section 1988 fees. 854 N.E.2d at 53. Holding that the plaintiff was a prevailing party, we reversed the trial court's decision and remanded with instructions to award the plaintiff attorney fees. *Id.* at 57. On rehearing, the defendants claimed that we "usurped the trial court's discretionary function to determine whether to award attorney's fees...." *Daffron v. Snyder,* 856 N.E.2d 1245, 1246 (Ind.Ct. App.2006). The defendants argued that the only issue before the court was whether the plaintiff was a prevailing party. *Id.* at 1246 n. 1.

However, even in their own brief to this Court, the [defendants] framed the issue before us as follows: "Whether it was an abuse of discretion for the trial court to determine that this case was settled for

mere nuisance value, that the [plaintiff] was not a prevailing party and that the [plaintiff] was not entitled to attorney fees. Further, the briefs of both parties are replete with references to ... the propriety of an award of attorney's fees *outside* the issue of whether [plaintiff] was a prevailing party." *Id.* (emphasis in original). We therefore disagreed with the defendants' position that we could consider *only* whether the plaintiff was a prevailing party. The BMV states its issue in this case as "whether the trial court's decision to award attorney fees is contrary to 42 U.S.C. § 1988...." Brief of Appellants at 1. Given that section 1988 authorizes only a "reasonable attorney's fee" and given the nature of the BMV's arguments, we believe it is appropriate to address the reasonableness of the fee awarded by the trial court even in the absence of a specific articulation of the issue.

tial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley,* 461 U.S. at 440, 103 S.Ct. 1933.

The BMV cites the following language from *Nagy:*

A claim is considered unrelated to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct which gave rise to the injury on which relief was granted.

870 N.E.2d at 25. This language was employed in consideration of a reasonable fee to be awarded to the prevailing party. Concluding that the plaintiffs successful state constitutional claim and unresolved federal constitutional claims were "not unrelated," and that the successful state claim "gave them all they could reasonably ask for," we concluded that they were entitled to be awarded reasonable attorney fees for work performed on both claims. *Id.*

The BMV mentions several times in its brief, and mentioned several times at oral argument, that because the identification rule was promulgated pursuant to ARPA after this court's decision in *Villegas I,* the plaintiffs have not been benefited by winning their state claim because they are still unable to obtain driver's licenses. However, the BMV's argument is misplaced. The identification rule promulgated by the BMV after *Villegas I* is not before us and is irrelevant to the determination at hand. We cannot judge the extent of the plaintiffs' success based upon events occurring after (and as a direct result of) our decision in *Villegas I;* we are concerned only with the identification rule upon which the plaintiffs' challenge was based and the proceedings surrounding that rule. *See Villegas,* 832 N.E.2d at 610 n. 15 ("We have no way of knowing whether the BMV in the future will promulgate the same identification requirements or different ones."). Although the court did not reach the plaintiffs' constitutional claims, the court in *Villegas I* gave the plaintiffs all the relief they had asked for: the identification rule was declared void and without effect.[8] *Cf. Farrar,* 506 U.S. at 114–15, 113 S.Ct. 566 (holding that a civil rights plaintiff who recovers damages in any amount qualifies as a prevailing party, but because the plaintiffs in this case recovered nominal damages of one dollar on a seventeen million dollar claim, their limited success did not merit an award of attorney fees). The plaintiffs obtained substantial relief, and we conclude the trial court properly awarded section 1988 fees to the plaintiffs. Because the BMV does not claim that the hours expended or the rates charged by the plaintiffs' attorneys as set forth in their affidavits are unreasonable,[9] we affirm the trial court's fee order in its entirety.

---

**8.** The dissent notes that the trial court's judgment subsequent to *Villegas I* "did not afford the plaintiffs an opportunity to obtain driver's licenses or identification cards in the absence of compliance with the challenged identification requirements." Slip op. at 24. However, the challenged identification requirements were null and void following *Villegas I;* the newly-promulgated identification requirements are part of a new rule, the constitutionality of which is subject to a new challenge.

**9.** We agree with the dissent's statement that Section 1988 was not intended to produce windfalls for attorneys. *See* slip op. at 23 (citing *Farrar,* 506 U.S. at 115, 113 S.Ct. 566). We rest our decision regarding attorney fees on our determination, based upon the generous formulation of the "prevailing party" test,

## Conclusion

The plaintiffs are prevailing parties for succeeding on a state statutory claim that is pendent to a substantial federal constitutional claim that arises from a common nucleus of operative fact. Moreover, the plaintiffs' success in having the identification requirements declared void merits an award of attorney fees. The trial court's section 1988 attorney fee award is therefore affirmed.

Affirmed.

RILEY, J., concurs.

BAKER, C.J., dissents with separate opinion.

BAKER, Chief Judge, dissenting.

I respectfully dissent from the majority's determination that the plaintiffs were the prevailing parties in this action for the purpose of awarding attorneys' fees and costs under 42 United States Code section 1988 (Section 1988). As the United States Supreme Court observed in *Farrar v. Hobby*, a "plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Moreover, in *Nagy v. Evansville–Vanderburgh School Corp.*, this court observed that with regard to Section 1988 claims, "[p]arties are considered to have 'prevailed' in litigation if they succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." 870 N.E.2d 12, 19 (Ind.Ct.App.2007) (citing *King v. Ill. State Bd. of Elections*, 410

F.3d 404, 414 (7th Cir.2005)). However, Section 1988 is not intended to produce windfalls for attorneys. *Farrar,* 506 U.S. at 115, 113 S.Ct. 566.

In this case, before the first appeal, the trial court determined that the plaintiffs had suffered no injury with regard to their federal constitutional claims. In essence, the trial court found that the plaintiffs' federal constitutional claims were not viable, and we did not overturn that decision on appeal. *Villegas v. Silverman,* 832 N.E.2d 598 (Ind.Ct.App.2005). Indeed, we did not strike down the BMV's identification requirements as contrary to law. Rather, we only determined that such identification requirements amounted to rule-making and the BMV was obligated to comply with Indiana Administrative Rules and Procedures Act (ARPA) [10] with regard to notice, public hearings, and review by branch officials in promulgating those rules. *Id.* at 609–10. Nowhere in our opinion did we declare that the substance of the rule had changed, and we found it unnecessary to reach the merits of the plaintiffs' constitutional claims. *Id.* at 610 n. 15.

That said, it is apparent to me that the plaintiffs' arguments with regard to the BMV's failure to comply with ARPA are completely unrelated to the state and federal constitutional claims that were advanced in the complaint. Put another way, the BMV's failure to adopt the identification requirements as rules was wholly separate and distinct from whether the BMV could constitutionally employ identification requirements that precluded the plaintiffs

that the plaintiffs are prevailing parties here, and the fact that the BMV did not specifically challenge the amount of fees awarded to the plaintiffs or attempt to parse the fees such that those fees incurred in litigating the suc-

cessful state law claim could be separated from those incurred in litigating the undecided constitutional claims.

**10.** Ind.Code § 4–22–2 et seq.

from obtaining driver's licenses and identification cards.

I also note that the plaintiffs did not achieve the goal of their federal claims, which was the opportunity to obtain Indiana driver's licenses and identification cards. In fact, the trial court's judgment subsequent to the first appeal did not afford the plaintiffs an opportunity to obtain driver's licenses or identification cards in the absence of compliance with the challenged identification requirements. Rather, the trial court only determined that the process that the BMV used was defective, and the plaintiffs caused no substantive changes in how the identification process was handled by the BMV before the first case on appeal had concluded.

As the majority observes, the BMV formally and properly adopted rules that were essentially the same as those that it had not previously promulgated. Thus, it cannot be said that the plaintiffs achieved any substantive change in the law as a result of their lawsuit, and they were not granted any additional affirmative relief in the trial court's order on remand. In short, the plaintiffs were still not able to obtain driver's licenses or identification cards as a result of the litigation.

The majority seemingly takes the view that a claimant need only advance "some" type of constitutional claim and succeed on a non-related state claim to become entitled to attorneys' fees under Section 1988, regardless of any failure to prove the constitutional claim or even make a showing that the federal claims were substantial. To me, such a notion contradicts the spirit of the Section 1988 provisions. Because the plaintiffs' counsel did not achieve any recovery that was beneficial to their clients pursuant to their federal claim, I believe that the award of attorneys' fees in this case was not warranted under Section 1988. Thus, I would reverse the judgment of the trial court.